Case 1:21-cr-00538-DLF Document 1-1

Case: 1:21-mj-00279
Assigned To : Meriweather, Robin M.
Assign. Date : 03/05/2021
Description: Complaint w/ Arrest Warrant

**STATEMENT OF F**

1. Your affiant, Brandon Kimble, is a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to Denver Division, Colorado Springs Resident Agency. In my duties as a special agent, I investigate domestic terrorism, and other national security violations. I have been employed as an FBI Special Agent since 2016. Currently, I am a tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent with the FBI, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

2. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

### *Incursion at the U.S. Capitol on January 6, 2021*

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

6. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice

President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

7.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Facts Specific to Jacob Travis Clark*

8.      The U.S. Capitol has closed-circuit television (CCTV) cameras covering the U.S. Capitol. Footage from January 6, 2021 was reviewed by law enforcement officers. A search of Colorado's Department of Motor Vehicles returned JACOB TRAVIS CLARK's April 2019 driver's license photograph.  By comparing this photograph to the image of the person captured on CCTV footage, your affiant reasonably believes that the person identified below is identical to JACOB TRAVIS CLARK.  Additionally, a person who knows CLARK was sent 9 images believed to be CLARK. This person identified 5 of the images as being Jacob T. Clark.

9.      WITNESS 1 has known CLARK for his entire adolescent and adult life.  WITNESS 1 provided the FBI with a recent photograph of CLARK from CLARK's social media account (since deleted), which is included below for comparison.



10. WITNESS 1 was shown 9 screenshots of CLARK, all from the U.S. Capitol footage. Witness 1 was able to identified CLARK in the following 5 screenshots.



11. WITNESS 1 did not make a positive identification in the following 4 screenshots:



12. CCTV Video labeled 0303 USCS 03 Senate Gallery SE near S309 2021-01-06 14:32:02 contains the following (all times approximate):

    a. CLARK enters frame at the 7:05 mark as the third person visible after the hallway momentarily cleared of government employees.



b. CLARK picks up what appears to be a book or binder at the 7:15 minute mark and carries it around. CLARK talks at a plain clothes Capitol Police officer at the 7:30 mark and enters through the closest of 4 doors to the camera. CLARK leaves the door at the 7:40 mark as officers attempt to close and lock the door.



c. At the 7:50 mark, CLARK drops the book/binder near where he picked it up from. At 8:07, CLARK joins a group attempting to gain access through the second door against a group of 3 plain clothes officers attempting to close the door. The group engages in some shoving and punching with the officers. CLARK can be seen in the bottom-center of the screenshot of the video below with a red oval around him.



d. At 8:21, CLARK squares up with a Capitol Police officer wearing plain clothes as three other officers retreat from the group. Other rioters get between CLARK and the other rioters squaring up against the Capitol Police officer. The officer then retreats off screen. CLARK then exits the camera frame through the second door from the camera.





13. CCTV Video labeled 0157 USCH 01 near H159 OAP Corridor - 2021-01-06_19h18min30s contains the following (all times approximate):

    a. CLARK appears on video at the 11:55. At 12:05 (below) he is seen gesturing at the law enforcement officers. One of the officers reported that CLARK used intimidating language and indicated "they could take us".



    b. CLARK then moves to the front line of riots standing in front of the officers at 12:15. At 12:43, CLARK turns around which shows the same hoodie is being worn as is visible outside the Senate doors.



c. At around 13:00, CLARK is in the face of the officer closest to him. From 13:15-13:20, CLARK makes more gestures indicating the officers need to move.



d. At 13:50, the officers begin retreating backwards in the hallway and the crowd, with CLARK in front, follows.



e. At 14:20, the officers retreat around a corner, while still facing the crowd, and CLARK and the crowd follows the officers around the corner.



14. CCTV Video labeled 0205 USCS 02 West Stairs near S221 - 2021-01-06_19h40min01s contains the following (all times approximate):

a. CLARK enters the view of the camera at 09:13 from the right side, as the third non-law enforcement person to enter the frame. CLARK exits frame to the right side at 9:23, and re-enters frame at 9:32.



    b. At 10:10 to 11:00, CLARK is talking with one of the officers that is blocking the hallway.



    c. At 11:20, CLARK exits again from where he entered the camera frame (right side).

15. Body worn camera from Metropolitan Police Department Officer Rios captured audio and video of the same interaction as described in paragraph 14. This footage contains timestamps in the upper right corner and captured the following:

    a. CLARK puts his hands on an officer and states "Next time we're coming with [unintelligible]."



b. The officers state that they are just doing their jobs and CLARK screams "So were the Nazis!" CLARK then screams at the officers "Stand down!".



16. CCTV Video 0686 USCH 02 Rotunda Door Interior - 2021-01-06_19h37min05s contains the following (all times approximate):

a. At 0:50, CLARK enters the frame of the camera and is using a cell phone.



b. At 1:22 to 1:26 something off camera has CLARK's attention and he appears to join the crowd in pushing.



c. At 1:46 he joins a group of people organizing to go up the stairs on the left side of the frame, and then exits the camera frame to the left.

17.  Participants of the storming of the U.S. Capitol on January 6, 2021, utilized mobile devices to organize, document, and broadcast many of the events at the Capitol. As seen in the video above, CLARK is utilizing his cell phone in the video.

18.  WITNESS 1 provided the FBI with telephone number (***) ***-3427 and stated it was CLARK's phone number. The witness also stated that CLARK called CLARK's brother from inside the Capitol, and that CLARK was verbally bragging about being in the Capitol during the protest. This telephone number is also associated with two Google email accounts clarkyardcare@gmail.com and imawesome1260@gmail.com.

19.  Law enforcement lawfully obtained records from Verizon showing that the above telephone number is subscribed to Jacob Clark, of Trinidad, Colorado. IP sessions associated with this telephone number show that the phone was in the Mountain Time Zone on January 4, in the Central Time Zone on January 4th and 5th, and the Eastern Time Zone on January 5th and 6th, with a return to Central and then Mountain Time zones beginning on January 7th.

20.  According to records obtained through a search warrant served on Google, a mobile device associated with CLARK's above listed emails was present at the U.S. Capitol on January 6, 2021. Google estimates device location using sources including GPS data and information

about nearby Wi-Fi access points and Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) of the data. As a result, Google assigns a "maps display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10 meters to the location data point. Finally, Google reports that its "maps display radius" reflects the actual location of the covered device approximately 68% of the time. In this case, Google location data shows that a device associated with CLARK's above listed emails was within the U.S. Capitol building from approximately 2:15pm to 3:25pm.

*Statement of Probable Cause*

21. Based on the foregoing, your affiant submits that there is probable cause to believe that JACOB TRAVIS CLARK violated 18 U.S.C. § 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that JACOB TRAVIS CLARK violated 40 U.S.C. § 5104(e)(2)(D),(E), and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Finally, your affiant submits there is probable cause to believe that JACOB TRAVIS CLARK violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Finally, your affiant submits there is probable cause to believe that JACOB TRAVIS CLARK violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

_____
BRANDON KIMBLE
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this \_\_\_5th\_\_\_ day of March 2021.

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE