IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **Case No.: 21-CR-538-DLF** |
| v. : | |
| **JACOB TRAVIS CLARK,** : | |
| Defendant. : | |

## STATEMENT OF OFFENSE FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Jacob Travis Clark, with the concurrence of his attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial.

**I.   Elements**

**COUNT ONE**

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following

beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

## COUNT TWO

The essential elements of the offense of entering or remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. The defendant did so knowingly.

## COUNT THREE

The essential elements of the offense of disorderly or disruptive conduct in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any

restricted building or grounds;

2. The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and

3. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

## COUNT FOUR

The essential elements of the offense of engaging in physical violence in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(4), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds:

2. The defendant did so knowingly.

As used in this instruction, the term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or damage to, or destruction of, real or personal property.

## COUNT FIVE

The essential elements of the offense of disorderly or disruptive conduct in a Capitol building or grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. The defendant acted willfully and knowingly.

## COUNT SIX

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of Title 40, United States Code, Section 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

2. The defendant acted willfully and knowingly.

**II.   Statement of Offense**

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by United States Capitol Police (USCP). Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and

Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m. members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United

States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Jacob Travis Clark's Participation in the January 6, 2021, Capitol Riot*

8. In December of 2020, the defendant, Jacob Travis Clark, lived in Colorado. As early as December 20, 2020, Clark began discussing plans to attend former President Trump's January 6, 2021 rally in Washington, D.C.

9. The defendant sent text messages to various individuals from his cell phone discussing his planned trip to Washington, D.C. Included in the sent text messages are the following statements of Clark:

- [Responding to a question of why he wanted to go to D.C.] "Trump Rally. Its should be nuts. Maybe the start of something" (12/20/2020 at 10:46 a.m. EST).

- "Dude on thedonald.win they are straight planning a revolt on the 6th" (12/23/20 at 5:31 p.m. EST).

- "They are going into DC and bringing guns. Which isn't allowed in DC. They say they aren't gonna let Biden win. Supposedly several million are gonna show up" (12/23/20 at 5:33 p.m. EST).

- "Be a part of history for four tanks of gas and some travel food" (12/23/20 at 5:35 p.m.).

- [After first texting that "it would cost like $500 bucks to go an experience a possible history making event" (12/23/20 at 5:38 p.m. EST)], "Dude for like another 300 bucks we come get enough tar and feathers for a least 3 politicians" (12/20/2020 at 6:04 p.m. EST).

- "Merry Christmas man. I kinda lost my crypto fever a little man lol I'm focused on other things. Im gonna go to the protest in DC on the 6th" (12/25/20 at 11:32 p.m. EST).

10. On or around January 5, 2020, the defendant drove from Colorado to Washington, D.C. The purpose of the defendant's trip to Washington, D.C. was to stop or prevent Congress from certifying the Electoral College vote results.

11. On January 6, 2021, Clark attended former President Trump's rally on the Ellipse. At the rally Clark used his cell phone to send text messages to various people. Included in the text messages are the following statements of Clark:

- [After a contact listed as "Dad" texted "[t]his is your movement. I'm proud that you are there"] Clark responded, "Its whatever I hope something actually happens." (1/6/2021 at 10:32 a.m. EST).

- [After being asked if he was in D.C. to protest stimulus checks] Clark responded: "it's a trump thing I'm here for the riots when they say he isn't the winner lol. People are pissed they aren't just going away when they count the votes late. Lots of civil war talk." (1/6/2021 at 11:34 a.m. EST).

Page 7 of 16

12. After leaving the Ellipse, Clark joined the crowd gathering on the West Front of the U.S. Capitol grounds. Clark used his cell phone to send text messages, including the following:

- "its happening bro" (1/6/2021 at 1:25:01 p.m. EST).
- "we are gonna storm the capital" (1/6/2021 at 1:25:55 EST).
- "We are trying to storm the capital" (1/6/2021 at 1:42:08 EST)

13. Shortly before 2:00 p.m., members of the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Clark was among the crowd that advanced to the exterior façade of the building. After doing so, Clark sent the following text message: "We just got in part" (1/6/2021 at 1:52:32 p.m. EST).

14. At 2:14:46 EST Clark entered the first floor of the U.S. Capitol building through the Senate Wing Doors. (Figure 1). After entering, he sent the following text messages:

- "Yeah I'm in the capital (sic) building" (1/6/21 at 2:18:29 EST).
- "We stormed it and busted the door down" (1/6/21 at 2:18:39 EST).

Clark is circled in Figure 1 after he entered the U.S. Capitol:



Figure 1

15.     From the Senate Wing Doors, Clark traveled towards the Crypt where he and other rioters encountered a line of police officers who attempted to stop the group from proceeding deeper into building. (Figure 2). During this encounter, at approximately 2:19 p.m., Clark gestured at the law enforcement officers and used intimidating language to indicate to the police they needed to move. During this encounter Clark stated the mob could overrun the police and screamed at the officers to "stand down!" Eventually, at approximately 2:25 p.m., the officers were forced to retreat and Clark and others proceeded deeper into the Capitol building. Clark is circled in Figure 2 pointing at the officers.



Figure 2

16.     At approximately 2:32 p.m. Clark proceeded to the third floor of the U.S. Capitol and to a hallway outside the Senate Gallery. He was one of the first rioters to reach that location. (Figure 3). Clark is circled in Figure 3.

*Figure 3*



17. As Clark and other rioters gathered in the hallway, three plain-clothes U.S. Capitol Police officers attempted to close and lock the Senate Gallery doors. After successfully locking one door, Figure 4, the officers attempted to lock another set of doors. As they did so, a group of rioters, including Clark, confronted the officers. Members of the group pushed and hit the officers who were forced to retreat before the door could be locked. (Figure 5). Clark did not personally hit or push an officer. Clark is circled in Figures 4 and 5.

18. As the Capitol Police officers retreated, the crowd followed. (Figure 6). Clark approached one of the officers and squared up into a fighter's stance. No fight ensued. (Figures 6 and 7). Clark is circled in Figures 6 and 7.



Figure 5



Figure 4

Page 11 of 16



Figure 6



Figure 7

19.     Clark and other rioters were able to gain access to the Senate Gallery. Clark was one of the first individuals to gain access to the Senate Gallery. Figure 8 shows Clark (circled) after he entered the Senate Gallery.



*Figure 8*

20. Clark sent text messages to others about his entry into the Senate Chamber, including the following:

- "I was the first one in the chamber" (1/6/21 at 3:02:35 p.m. EST).
- "Dude we stormed the capital" (1/6/21 at 3:02:51 p.m. EST).
- "I helped break down the door" (1/6/21 at 3:03:00 p.m. EST).
- "That's the voting chamber" (1/6/21 at 3:03:15 p.m. EST).

Clark also had the following text communication with a contact listed as "Trevor":

Trevor: "Are you in the capitol right now? (1/6/21 at 3:03:28 p.m. EST).

Clark: "Fuck yeah" (1/6/21 at 3:030 p.m. EST)

Clark: "We took the whole thing. They had to evacuate" (1/6/21 at 3:04:03 p.m. EST).

Trevor: "Holy fuck dude. So what do you do now?" (1/6/21 at 3:04:32 p.m. EST).

Clark: "Idk" (1/6/21 at 3:04:42 p.m. EST).

Clark: "We do it everyday they try to vote" (1/6/21 at 3:04:53 p.m. EST).

Trevor: "How is anything going to get passed then?" (1/6/21 at 3:05:36 EST).

Clark: "Its not till we get what we want" (1/6/21 at 3:06:30 EST).

21. Clark remained in the U.S. Capitol until 3:53 p.m. when he exits out the Senate Carriage door (Figure 9).



Figure 9

If the Court finds the existence of these facts beyond a reasonable doubt, the defendant stipulates that this evidence would establish each and every element of the charged offenses.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Barry K. Disney
BARRY K. DISNEY
Trial Attorney – Detailee
Capitol Siege Section
Kansas Bar No. 13284
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Office: 202-305-4367
Email: Barry.Disney@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Jacob Travis Clark, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 01/20/2023

Jacob Travis Clark
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/23/2023

Eugene Ohm
Attorney for Defendant Clark