UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00538-DLF |
| | : | |
| **JACOB TRAVIS CLARK,** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

Jacob Travis Clark, by and through his attorney, respectfully responds to the government's Sentencing Memorandum to address the government's allegations that Mr. Clark "threatened" personal injury to an individual, triggering the eight-level enhancement under U.S.S.G. §2J1.2(b)(1)(B) and to respond to the cases cited by the government in support of its allocution. Counsel states the following in support of his recommended sentence of nine months incarceration.

**Argument**

Mr. Clark sincerely regrets all of his actions on January 6th. He has always accepted responsibility for his conduct and recognized it was wrong. From the beginning, he recognized the gravity of what he had done, and felt ashamed. As time has passed and his daughter has become more dependent on him, he has become focused.

His entry into the Senate Chamber was plainly wrong. But in significant ways, Mr. Clark's conduct is more suitable for the category of misdemeanor offenses. Mr. Clark did not assault any officers. He did not threaten any officers with physical injury. He did not encourage the misconduct of others inside the Capitol. He didn't throw anything or steal any flags or other memorabilia. He wasn't carrying a weapon. Since his arrest, he has been perfectly compliant. He has become a single father and he and his fourteen-year daughter have been excelling since moving

to Laramie, Wyoming. He has been saving money for the incarceration that he knows he deserves. He has also recognized his need for treatment. He doesn't have a criminal history.

A nine-month sentence would be appropriate because it would be among the most severe sentence for a misdemeanor offense. While it would be at the lower end of the spectrum for 1512 sentences, Mr. Clark presents more mitigating factors then in *United States v. Wood* (probation) and *United States v. Hodgkins* (8 months).

## I. U.S.S.G. §2J1.2(b)(1)(B) does not apply because Mr. Clark did not threaten or injure any persons or property.

The government incorrectly asserts that Mr. Clark's "offense involved 'threatening to cause physical injury to a person in order to obstruct the administration of justice … [s]pecifically, when Clark took a fighting stance against a police officer against a police officer outside the Senate Gallery, he threatened physical injury to that officer." This overly broad definition of a threat still does not articulate Mr. Clark's intent and behavior. As government's Exhibit 3 shows, Mr. Clark was mirroring the individual's[1] fighting stance and laughing. He never physically engaged with the man and turned away within seconds.

As illustrated below, Mr. Clark is walking down the hallway when a man wearing a suit (encircled in black) raises his fists. That man appears to be engaging the individual in orange (encircled in red) and enters into a fighting pose. Mr. Clark (encircled in blue) is in the background, looking in another direction.

---

[1] The individual is dressed in a suit so it is not clear if he was a police officer. He has never been identified to the Defense. For clarity, this memorandum will refer to the man as the "man in the suit."



    Mr. Clark then turns his head and sees the man in the suit.  The man's fists are raised and he appears to look at Mr. Clark, gesturing at him to approach.  Mr. Clark responds by smiling and mimicking his actions while approaching.

    The video then shows that the man in the suit has taken a fighting position.  Mr. Clark sees him and, assuming he was the target, approaches the man laughing.  The video shows the man in the suit raising his fists before Mr. Clark takes his pose.  While it can perhaps be reasonably argued that Mr. Clark is taunting the man's show of force, there is nothing in the video that even arguably constitutes a threat.







Within seconds, Mr. Clark turns around and walks in the other direction, even as the man in the suit's fists remain clenched.



The government asks this Court to determine that Mr. Clark was both threatening the man in the suit and that he was threatening physical injury without any direct evidence of Mr. Clark's intent – there is no audio or statements referencing this moment. The government must prove both. In applying the canons of statutory interpretation, as courts are directed to do when interpreting guidelines, the canon against surplusage favors the interpretation which *avoids* surplusage." *United States v. Ali*, 718 F.3d 929, 937 (D.C. Cir. 2013); *United States v. Martinez*, 870 F.3d 870 F.3d 1163, 1166 (9th Cir. 2017) ("We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation."). In this context, the Court must conclude first that there is a threat; and second, that the threat is of "physical injury" to apply the eight-level enhancement.

Even if the Court finds the government's interpretation of Mr. Clark's actions convincing, the Court must somehow also conclude that Mr. Clark's reactionary and fleeting fighting pose and the quick decision to walk away demonstrated that Mr. Clark intended not only to threaten, but to threaten to physically injure. But as the video shows, Mr. Clark did not see the man in the suit's prior interaction with the man in the orange, - all he was able to tell was that the man had clenched and raised his fists towards him. The most reasonable interpretation is that Mr. Clark's action – to raise his own hands – conveyed only that he would be willing to defend himself. Nothing about what he did or say is sufficient to conclude that he was making a threat, much less "threatening physical injury."[2]

---

[2] Although the government does not argue that Mr. Clark threatened officers as he walks towards the Crypt, the government's memorandum includes a section titled: "Clark Threatens Police Officers Inside the Capitol." ECF 54 at 4. It first asserts that Mr. Clark threw an object towards a line of officers – even assuming that was true, there is no evidence that the object was capable of injuring or threatening to injure anyone. Moreover, the object apparently landed harmlessly and there is no evidence that any officer felt it or felt threatened by it.

The government has failed to meet its burden, by a preponderance of the evidence, that Mr. Clark injured or threatened physical injury to any person or property – the eight level enhancement should thus not apply.

**II.     The government cites to cases from defendants whose conduct was substantially worse than Mr. Clark's.**

Mr. Clark is ashamed of his actions on January 6th and has been remorseful every day since. But his actions still fall well short of the misconduct in the cases cited by the government. To be clear, while Mr. Clark may have been in the vicinity of shouting confrontations with police, he was never in the presence of violence or assaultive conduct. He did not plan for violence, did not bring weapons or any body armor. He did not use pepper spray, he did not steal or destroy and property. He did not destroy evidence and he did not publicly brag about his actions. He did not encourage others when he was at or in the Capitol. And within a day of January 6th, Mr. Clark recognized the depth of his mistake.

The government relies upon *United States v. Neefe*, 21-cr-567 (RCL) even though that case involved both the Obstruction and Assault offenses. Mr. Neefe came to Washington D.C.

---

Without evidentiary support, the government also claims that "Clark joined a crowd of rioters, pointed at police and threatened them." ECF 54 at 5. The assertion cited paragraph 15 of the Statement of Offense which states: "Clark gestured at the law enforcement officers and used intimidating language to indicate to the police they needed to move. During this encounter Clark stated the mob could overrun the police and screamed at the officers to "stand down!" The government does not cite to or quote the alleged intimidating language. Mr. Clark agreed in the Statement of Facts that he said "stand down" But it was another individual that said: "All you have to do is step aside – you won't get in trouble. Stand down." Mr. Clark, standing next to him, only then says, "Stand down." He then turns and leaves, further demonstrating that these were not threats or commands but requests.

In the same section, the government includes a photograph, labelled Image 3. ECF 54 at 6. But it is unclear the basis upon which the government asserts that Mr. Clark's statements constitute "threats" – there is no audio to the video capturing this interaction.

wielding a wooden club that he had named the "Commie Knocker." He and others had lifted a giant and sharp-edged metal sign and used the sign to assault police officers guarding the Capitol. He later bragged on Facebook about being tear gassed and maced. He also deleted his Facebook page and destroyed evidence. Notwithstanding the aggravating factors in that case, the government requests a sentence of 46 months for Mr. Clark, five more months than what Mr. Neefe received.

The government also relies upon *United States v. Rubenacker*, 21-cr-193 (BAH) despite the fact that the defendant in that case *assaulted **two** police officers*, including one with a plastic bottle striking the officers' head. ECF 56 at 22. He smoked marijuana inside the building and sprayed a liquid inside the Rotunda. ECF 56 at 32 n.9. He was also in the front of the crowd of rioters who chased Officer Eugene Goodman up the stairs. While doing so, he shouted, "Keep running, motherfucker!" ECF 56 at 11. Mr. Rubenacker, despite these additional aggravating factors and the assault conviction, was sentenced to 41 months - 5 months less than what the government requests here.

The government also cites to *United States v. Reid*, 21-cr-316 (DLF). But there, the defendant destroyed his phone to obstruct the investigation against him. As a result, his offense level was enhanced for obstruction of justice and he was also denied acceptance of responsibility for that conduct. Mr. Reid also made comments to a relatively large online following after January 6th about his future violence against law enforcement and minorities. Mr. Reid had a history of domestic violence arrests that did not result in conviction.

Mr. Clark acknowledges that he entered the Senate Chamber. The most analogous case is *United States v. Paul Hodgkins*, 21-cr-188 (RDM), where the defendant entered the Senate Chamber and remained for about thirty minutes. Mr. Hodgkins did not have body armor or

weapons but did have goggles, latex gloves and rope.  He was sentenced to eight months in prison.

A modest period of incarceration would be consistent with the other sentences given to individuals who did not assault or threaten to assault anyone; who did not destroy or threaten to destroy property; who did not destroy evidence in any way; who did not encourage others; and who did not make public statements bragging about his misconduct. In addition, counsel asks the Court to consider all mitigating factors including his wholehearted acceptance of responsibility, his traumatic past and the challenges that await him.

## Conclusion

For these reasons and any others that appear to the Court, Mr. Clark requests that he be sentenced to a nine-month period of incarceration followed by a period of supervised release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Eugene Ohm
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Eugene_ohm@fd.org