UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 21-CR-538 (DLF) |
| JACOB TRAVIS CLARK, | |
| Defendant. | |

## GOVERNMENT'S OPPOSITION TO MOTION FOR PRETRIAL RELEASE

The United States of America, by and through counsel, respectfully opposes the defendant's motion for pretrial release. (ECF No. 108). The defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Crime of Violence) and 3142(f)(1)(E) (Dangerous Weapon). The defendant assaulted multiple officers protecting the U.S. Capitol on January 6, 2021, with dangerous weapons and with the apparent intent to facilitate the breach of the Capitol and the disruption of the certification of the electoral vote count. The United States opposes release because, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

## FACTUAL BACKGROUND

The government relies on the statement of offense for the stipulated trial (ECF No. 43) for the factual background of the riot that occurred at the Capitol on January 6, 2021 and the misdemeanor charges originally brought against the defendant. The defendant does not dispute

1

these facts. *See* ECF No. 108 at 5. Before, during, and after January 6, the defendant made multiple statements indicating his intent to disrupt the proceedings inside the Capitol and his willingness to use violence to accomplish that goal. *See* ECF No. 43 at 7-14. As the defendant stated, he was "here for the riots when they say he isn't the winner." *Id.* at 7. His actions on January 6, including the additional conduct he is now charged with, match those intentions. To summarize the defendant's additional conduct charged in the superseding indictment, the defendant picked up a two-by-four wooden plank and carried it into the hallway leading to the Crypt where officers were trying to prevent rioters from entering. Once in the hallway, the defendant hit a USCP Officer in the groin with the plank, causing him to stumble into the Crypt in pain. The defendant continued his violent rampage and joined the first wave of rioters who forced officers to retreat into the Crypt area. Within a minute of his entry into the Crypt, the defendant picked up a helmet and threw it at officers inside the Crypt. He then proceeded to various locations in the Capitol, was present for violent assaults on officers, aggressively approached and antagonized officers and was one of the first rioters to enter the Senate Gallery. His violent conduct warrants detention in this matter.

## PROCEDURAL BACKGROUND

In August 2021, the grand jury returned an indictment (ECF No. 21) charging the defendant with six counts including Obstruction of an Official Proceeding in violation of 18 U.S.C. §§ 1512(c)(2) and 2 and five misdemeanor counts for his conduct at the Capitol.

After a bench trial on stipulated facts, on January 30, 2023, this Court found the defendant guilty on all counts. (ECF No. 43 (1/30/2023 Minute Entry)). On October 27, 2023, this Court sentenced Clark to 33 months of incarceration – a more than 50 percent upward variance from the

top of the applicable Guidelines range of 15 to 21 months (ECF No. 77 at 83-84, 149) – to be followed by 12 months of supervised release. (ECF No. 70). As the Court explained at sentencing, Clark's "conduct justifies an upward variance, . . . because . . . he's acting highly inappropriately in the Capitol. He's not someone who just said I'm going in there to obstruct the proceedings and I want to talk to the members and they can't vote until I can talk to them and . . . I demand to talk to them. He's . . . in their face. He's pointing fingers. He's doing some things that are going to be problematic for him." (ECF No. 77 at 83-84).

On November 9, 2023, Clark appealed his conviction and sentence (ECF. 72), and Clark surrendered to the Bureau of Prisons (BOP) on December 4, 2023. Between December 2023 until the instant motion, the defendant filed multiple motions for release, which the Court denied. *See* ECF No. 90, 93; see also Minute Orders Denying Motion (04/30/2024; 07/26/2024). On September 9, 2024, upon joint motion of the parties, the D.C. Circuit vacated the defendant's conviction under 18 U.S.C. § 1512(c)(2) and (2) and remanded the case for further proceedings. *See* Case No. 23-2310, Per Curiam Order (9/9/2024). The Circuit did not render any judgment on release conditions. *Id.* Defendant alerted BOP to the Circuit Court order and requested a recalculation of his sentence and release. On or about September 17, 2024, the defendant was released, in error, from BOP custody without the government's knowledge.

On October 2, 2024, the grand jury returned a superseding indictment (ECF No. 100), charging the defendant with ten counts: (1) Civil Disorder, 18 U.S.C. § 231(a)(3); (2) Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon, 18 U.S.C. § 111(a)(1) and (b); (3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and

3

Inflicting Bodily Injury, 18 U.S.C. § 111(a)(1) and (b); (4) Entering and Remaining in a

Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(1) and

(b)(1)(A); (5) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a

Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(2) and (b)(1)(A); (6) Engaging in Physical

Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C.

§ 1752(a)(4) and (b)(1)(A); (7) Entering and Remaining in the Gallery of Congress, 40 U.S.C.

§ 5104(e)(2)(B); (8) Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); (9)

Act of Physical Violence in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(F); and

(10) Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G).

During the week of October 10, 2024, the government became aware of the release of the

defendant, filed a motion for a hearing and subsequently requested his remand. On October 17,

2024, the court held a hearing and ordered the defendant to self-surrender to BOP by October 31,

2024. In its reasoning, this Court held that the defendant should have requested release through

the Court and the defendant should not have been released by BOP absent an order from the Court

resentencing the defendant.

On October 25, 2024, the parties filed a joint status report stating that based on records

obtained from BOP, the defendant served 9 months and 15 days of his 33-month sentence and

earned 76 days of FSA credit at the time of his release. *See* ECF No. 107. The defendant now

moves for his pretrial release under 18 U. S. C. § 3142(g), stating that the defendant has been

compliant with conditions when previously on release and that the evidence against him is

"weak." *See* ECF No. 108 at 1. Taking into consideration the charges being brought against the

defendant and the circumstances of his conduct, this Court should deny the defendant's motion.

## ARGUMENT

The government respectfully requests that the defendant be detained pending trial because there is no condition or combination of conditions that will ensure the safety of the community if the defendant were to be released. There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). The government submits that each of these factors weighs in favor of the defendant's detention.

### The Nature and Circumstances of the Offenses Charged

Under 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(e), the Court may detain a defendant if the case involves a crime of violence or a dangerous weapon. The defendant's violent assaults on multiple police officers who were trying to protect the Capitol satisfies these elements and weigh heavily in favor of detention. Over the course of a few minutes, the defendant committed multiple assaults on different officers with different dangerous weapons. His conduct, especially in the context of the attack on the Capitol, evinces an intent to target law enforcement officers for harm and to disrupt the legitimate functioning of government. As the government has detailed in the Statement of Offense and at sentencing, the evidence shows that Clark repeatedly acted aggressively against officers trying to protect the Capitol – by marching through the Capitol with a two-by-four wooden plank, by using the plank to hit an officer, by threatening officers, by yelling

5

at them to "stand down," by throwing a helmet at officers in the Crypt, by participating in a crowd that pushed against officers, by encouraging other rioters forward, and by taking a fighter's stance against officers trying to protect the Capitol building. After leaving the Capitol building, Clark continued to brag in text messages that he had helped "break down a door" and that he would "do it everyday they try to vote." (ECF No. 54 at 10). The defendant's statements and violent conduct on January 6 weigh heavily in favor of detention.

### **The Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against the defendant is both strong and compelling. Significantly, the defendant was captured in multiple videos recorded by officers wearing body worn cameras and capitol surveillance videos that clearly show him aggressively engaging with officers defending the Capitol that day. The defendant is in the front of many different groups of rioters as they push past officers. Video captures the defendant following officers after they tried to retreat from being outnumbered. Video also captures him taking a fighting stance against an officer moments after they were violently assaulted for attempting the secure the Senate Gallery doors.

Moreover, multiple officers were interviewed concerning the events of January 6, 2021 and described the defendant's conduct as aggressive, violent, and disruptive. During sentencing, this Court also found his conduct to be aggressive and inappropriate, warranting an upward variance.

While preparing for sentencing in 2023, undersigned counsel was added as counsel for this case and became aware of the additional plank assault on a USCP Officer which is now charged

in Count Three. Based on a review of interviews that FBI Agents and other attorneys conducted

with the victim officer, the officer identified the defendant as the person who hit him in the groin

with a wooden plank. There was also Capitol surveillance footage from the Senate Wing Door and

Crypt area corroborating the officer's statements. These clips did not show the moment when the

officer was struck but did show the defendant as the only person entering the hallway with a

wooden plank, and about 45 seconds later, showed the same officer stumbling into the Crypt. At

sentencing, the government presented this uncharged conduct to the Court as relevant conduct and

provided to the Court a victim impact statement from the officer who was unavailable to testify at

the sentencing hearing. Defense counsel presented a video from the same location as the assault,

showing a plank thrown, arguing that this cast doubt on the officer's identification of the defendant

as his assailant. While the Court did consider the defendant's conduct of carrying a wooden plank

as relevant conduct, it declined to consider the plank assault as relevant conduct because of the

officer's unavailability to discuss this video in detail and the lack of a timestamp on the video.

After sentencing, the government was able to interview the officer victim of the plank assault

regarding the additional video evidence. During the interview, the officer confirmed that the

defendant was the person who hit him with the plank. The officer also reviewed video evidence

the defendant presented at sentencing, rejecting the defendant's theory that the video in question

was the assault.

Specifically, the officer indicated that the assault occurred when officers first entered the

hallway to block rioters from entering the Crypt. The officer indicated that he was in front of this

line approaching rioters when the assault occurred. In the background of the video provided by

defense counsel, rioters were already surrounding officers and the officers were standing in position – not approaching the crowd. The officer victim also could not find himself in the video and indicated that he believed he was no longer in the line at the time of the video. This evidence was later presented to a grand jury who indicted the defendant of assault and civil disorder based on this conduct.

Further, there is additional video showing the defendant throwing a helmet at officers in the Crypt with the sound of the helmet hitting the ground echoing over the roar of the mob. At sentencing, the government introduced Capitol Surveillance video of this same throw. However, the footage from the Capitol did not have sound and the video was from a farther vantage point – the object thrown could not be determined. After sentencing, the government discovered additional video with sound and a clearer vantage point of the throw. During the status hearing on October 17, 2024, the government made the Court aware of this additional evidence to which the court responded stating, "given what you're telling me, that you have additional evidence now, that may well change the way I look at this case." *See* Status Hearing Tr., 21-cr-538 (10/17/2024) at 41. This evidence against the defendant is compelling, and the strength of the evidence weighs heavily in favor of detention.

### Defendant's History and Characteristics

The defendant's history and characteristics further weigh in favor of detention, demonstrating that he would be a danger to the community if released. The defendant has had multiple contacts with the criminal justice system, including being found guilty of four misdemeanor charges from his participation in the riot at the Capitol on January 6.

- In 2006, Clark pled *nolo contender* to possession of a controlled substance. Clark was sentenced to six months of probation. PSR ¶ 52.

- In 2010, Clark was charged with and pleaded guilty to criminal impersonation and driving under the influence. He was sentenced to three years deferred probation for the criminal impersonation conviction. He was sentenced to 15 days' imprisonment and 3 years' probation for the driving under the influence conviction, concurrent with the criminal impersonation sentence. PSR ¶ 54.

- In 2015, Clark was charged and found guilty of causing an open fire. He was assessed a fine of $285.50. PSR ¶ 55.

- Clark also has ten traffic infractions dating from 2009 to 2019. PSR ¶¶ 57-67.

- In 2023, Clark was found guilty of Entering and Remaining in a Restricted Building or Grounds; Disorderly Conduct in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Capitol Building; and Parading, Demonstrating or Picketing in a Capitol Building. *See* ECF No. 43 (1/30/2023 Minute Entry)). He was sentenced to 12 months imprisonment on these charges. *See*10/27/2023 Minute Entry.

The defendant's crimes on January 6 were not an isolated event in an otherwise law-abiding life. His actions on January 6, 2021, demonstrated a disregard for the law and the legitimate functions of government, providing clear and convincing evidence that he is unwilling to follow lawful orders or defer to the legitimate authority of the government. When the defendant assaulted federal officers while participating in the attack on the Capitol, he did so in the presence of hundreds of USCP and MPD officers who were working to protect both the constitutionally-mandated Certification proceeding and the members of Congress duty-bound to hold that proceeding. The defendant blatantly assaulted officers in full view of other law enforcement, without even the pretense of following the law. The presence of the USCP and MPD officers that day were no deterrent to the defendant's multiple violent outbursts against officers.

**Danger to the Community**

The risk of danger to the community also supports detention. The defendant makes much of the fact that the Court found, in adjudicating an earlier motion to delay self-surrender, in December 2023, that the defendant did not at that point pose a danger to the community. (ECF No. 108 at 7 (*citing* 12/21/2023 Minute Order)). But at the time of this finding, and for the reasons described above, the evidence of the defendant's two assaults against law enforcement officers, with weapons, was not fully developed. Now that the evidence of the defendant's conduct is more fulsomely developed, the landscape has changed, and this prior ruling does not bind the Court now. His assaults with weapons, one of which did cause injury, demonstrate that he would be a danger.[1]

Clark's disciplinary prison record should give the Court further pause. In December 2023, only weeks after commencing his sentence, the defendant was found to have violated prison regulations governing inmates' phone privileges by "disrupt[ing] monitoring."[2] The defendant admitted to being in a physical confrontation with other inmates. *See* ECF No. 90 at 5 n.4. The defendant's continued inability to conform his conduct to basic rules suggests that Clark is still not

---

[1] For similar reasons, the Court should reject the defendant's argument that "the government has implicitly agreed that Mr. Clark did not pose a danger with minimal conductions [*sic*]." (ECF No. 108 at 6.) The argument ignores the new evidence that has developed since the defendant's initial appearance, and since the defendant was found guilty.

[2] The defendant has attempted to explain away his infraction as "a fight that [Clark] became involved in after he was attacked by White supremacists who were angry that he shared his phone time with a person of color." (ECF No. 90 at 5 n.4). But, on its face, Clark's excuse misses the point: Clark still defied BOP's rules by abusing his phone privileges in the first place.

ready to comply if released.[3]

Given the above assessment of all four relevant factors, clear and convincing evidence establishes there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion for pretrial release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:    */s/ Nialah S. Ferrer*
NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
(202) 557-1490
nialah.ferrer@usdoj.gov

---

[3] Additionally, this case is in an unusual posture due to the defendant's premature release. Beyond resolution of the new charges against him, the defendant will need to be resentenced on his original counts of conviction. The analysis of that issue is governed by 18 U.S.C. § 3143(a)(1), which establishes a rebuttable presumption in favor of detention unless the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community …." It is the government's position that under either statute, the defendant should be detained.