## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.: 21-CR-538 (DLF)** |
| | : | |
| **JACOB TRAVIS CLARK,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its response in opposition to defendant's motion that the defendant be released pursuant to 18 U.S.C. § 3142. The defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Crime of Violence) and 3142(f)(1)(E) (Dangerous Weapon). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

### Procedural History and Applicable Authority

The government refers to its response in opposition of the defendant's motion for pretrial release for the procedural history of the case. *See* ECF No. 109 at 2-4. The defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Crime of Violence) and 3142(f)(1)(E) (Dangerous Weapon). Under the Bail Reform Act, the Government may proceed by way of proffer. *See*, *e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Cabrera-Ortigoza*, 196 F.R.D. 271 (S.D. Cal. 2000); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013).   Pursuant to the facts and circumstances presented herein and at

1

the detention hearing, the defendant should be detained.

## **ARGUMENT**

The government relies on the statement of offense for the stipulated trial (ECF No. 43) for the factual background of the riot that occurred at the Capitol on January 6, 2021 and the misdemeanor charges originally brought against the defendant. The defendant does not dispute these facts. *See* ECF No. 108 at 5. Especially notable are the defendant's messages confirming his intent to disrupt the certification of the electoral college vote. For example, before January 6, the defendant sent a message saying, "I'm here for the riots when they say he isn't the winner." *See* ECF No. 43 at 7. He acknowledged that he "stormed" the Capitol on January 6, explaining, "we do it everyday they try to vote." *Id.* at 13. From additional evidence, it is now clear the defendant's intent was not to simply threaten, but to participate in violence in order to disrupt the certification of the electoral vote count.

Regarding the additional charges brought in the superseding indictment, the defendant committed two assaults with different dangerous weapons.

### *Count Three – Assaulting, Resisting, or Impeding Certain Officers With a Dangerous Weapon and Inflicting Bodily Injury*

Officer C.S., the victim of the conduct charged in Count Three, is an officer of the United States Capitol Police (USCP). On January 6, 2021, he was inside the Capitol helping protect the building and the congressional members and staff inside. While inside the building, he joined a group of officers as they entered the hallway leading from the Senate Wing Lobby area to the Crypt in efforts to prevent rioters from further breaching the Capitol. As his police line approached rioters, Officer C.S. saw the defendant approaching him. During this approach, the defendant threw a wooden plank at Officer C.S., hitting him in the groin area, causing him pain and preventing him

2

from helping his fellow officers. After being hit, Officer C.S. was assisted by another USCP officer and they retreated back into the Crypt. Shortly after the assault, rioters broke through the police line and entered the Crypt. Because he was in pain, Officer C.S. was unable to assist his fellow officers at the time the rioters entered the Crypt, but later was able to rejoin the effort to remove rioters from the building.

In September 2021, during an interview with FBI and other attorneys, Officer C.S. identified the defendant as the assailant. In November 2023, after sentencing, Officer C.S. was interviewed by FBI and undersigned counsel and reviewed additional video footage of a plank throw. This was footage referred to by defense counsel, during sentencing, when they used the video to question whether the defendant was the assailant. Officer C.S. stated that the plank thrown in this additional video provided by defense counsel was not the assault against him. Officer C.S. knew that this video captured another incident because in the video, a plank was thrown from far away. But when he was assaulted, Officer C.S. saw the defendant hit him with the plank as both rioters and police approached one another in close range. Further, Officer C.S. saw the face of his assailant and remembers his assailant. He was able to identify the defendant as the person who hit him in the groin with the wooden plank. As of this filing, Officer C.S. remains confident that the defendant was the person who hit him in the groin with a wooden plank.

The video evidence corroborates Officer C.S.'s statements. The defendant entered the Capitol building through the Senate Wing Doors at approximately 2:14 p.m. *See* Exhibit 1 at 3:39. Clark was part of the first group of rioters to breach this area. At approximately 2:15 p.m., he reentered the Senate Wing Lobby Area holding a two-by-four wooden plank. *See* Image 1 and Exhibit 1 (Timestamp: 4:07).



*Image 1 – Clark holding a two-by-four wooden plank near the Senate Wing Doors at
approximately 2:15 p.m.*

At approximately 2:15 p.m., the defendant walked down the hallway from the Senate Wing
Door toward the Crypt holding a wooden plank. *See* Image 1A and Exhibit 1 (Timestamp: 4:30).
At the time the defendant walked towards the Crypt, there was no other rioter nearby carrying a
plank. Between the time the Senate Wing Door and its adjoining windows were broken open at
approximately 2:13 p.m. and the time that the defendant walked down the hallway, toward the
Crypt, Capitol security cameras did not capture any other rioter carrying a plank in that direction.



*Image 1A – Still Image from CCTV of Clark Walking into the Hallway Leading into the Crypt at Approximately 2:15 p.m.*

Approximately 30 seconds after the defendant exited the camera's vantage point of the same hallway, USCP Officer C.S. was hit with a two-by-four wooden plank in the groin area, which forced him to retreat, in visible pain, into the Crypt. Video evidence shows Officer C.S. stumbling into the Crypt at approximately 2:16 p.m. and being assisted by another officer. *See* Image 2 and Exhibit 2 (Timestamp: 10:05). Seconds after Officers C.S. was hit, that same plank was thrown into the Crypt, where officers were attempting to reestablish a police line. *See* Image 2A and Exhibit 2 (Timestamp: 10:07).



*Image 2 – Still Image from CCTV of Officer C.S. Retreating Into the Crypt at Approximately 2:16 p.m.*



*Image 2A – Still Image from CCTV: A Wooden Plank is Thrown Into the Crypt After Assault at Approximately 2:16 p.m.*

### ***Count Two – Assaulting, Resisting or Impeding Certain Officers With a Dangerous Weapon***

Additionally, within minutes of assaulting Officer C.S, the defendant assaulted officers inside the Crypt. After Officer C.S. stumbled into the Crypt, other officers retreated into the Crypt from the hallway, outnumbered by rioters. At approximately 2:17 p.m., the defendant entered the

Crypt and threw an object towards a line of officers inside the Crypt. *See* Image 2B and Exhibit 2 (Timestamp: 11:10). At the time of sentencing, this was the only video of the incident known to the government, which did not include sound and was from a farther vantage point than the additional video found by the government.



*Image 2B – Still Image from CCTV of Clark Throwing Object at Officers Inside the Crypt*

In September 2024, the government discovered additional open-source video with sound and a clearer, closer vantage point of the throw. *See* Image 3 and Exhibit 3 (Timestamp: 00:50). The video depicts the defendant throwing a helmet towards officers in the middle of the Crypt. The helmet hits the ground near officers and the hard sound of it hitting the floor is heard above the chants of the crowd. After throwing the helmet, the defendant walked back into the hallway he used to enter the Crypt. *See* Image 3A. Based on the actions of the crowd in both videos and the defendant's visible face in the Exhibit 3, the FBI was able to determine that these two videos are of the same incident.



*Image 3 – Still Image of Open Source Video of Clark Throwing the Helmet at Officers*



*Image 3A – Still Image from Open Source Video of Clark Entering the Hallway Smiling After Throwing the Helmet at Officers*

To provide a summary of the timeline for the court including the exhibits:

- **Exhibit 1: CCTV of the Senate Wing Lobby Area**
  - 2:14:45 pm: Clark entered the Capitol through the Senate Wing Doors (timestamp in Exhibit: 3:39)
  - 2:15:12 pm: Clark reenters the Senate Wing Door Lobby Area with a wooden plank (timestamp in Exhibit: 4:07)
  - 2:15:45 pm: Clark enters the hallway leading to the Crypt area (timestamp in Exhibit: 4:30)
- **Exhibit 2: CCTV of the Crypt**
  - 2:16:14 pm: Officer C.S. stumbles into the Crypt (timestamp in Exhibit: 10:05)
  - 2:16:23 pm: Other officers retreat into the Crypt and rioters follow (timestamp in Exhibit: 10:07)
  - 2:17:01 pm: Clark places the helmet on the statute base (timestamp in Exhibit: 11:00)
  - 2:17:11 pm: Clark picks up and throws a helmet at officers (timestamp in Exhibit: 11:10)
- **Exhibit 3: Open Source Video of the Crypt (with sound)**
  - 2:17:11 pm: Clark throws helmet at officers then turns back into hallway (timestamp in Exhibit: 00:50 seconds)

This additional evidence ties together the defendant's actions and makes clear that the defendant—and not someone else—committed these assaults. The weight of the evidence is overwhelming and the defendant's arguments and proffered evidence do not cast doubt upon the government's proof of the additional counts in the superseding indictment. Altogether, the evidence establishes that the defendant intended to disrupt the certification of the electoral vote count and committed violence, with weapons, to make sure his ends were achieved. As the defendant stated, he was one of the rioters who "…stormed the capitol," "...took the whole thing. [Members of Congress] had to evacuate." *See* ECF No. 43 at 13. This violent conduct warrants detention.

## **CONCLUSION**

Wherefore, the Court should deny the defendant's motion for pretrial release and detain the defendant pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (Crime of Violence) and 3142(f)(1)(E) (Dangerous Weapon).


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


BY:  _Nialah S. Ferrer_
_____
NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov

10