UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | No. 21-cr-00538 (DLF) |
| JACOB TRAVIS CLARK, | |
| *Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the defendant's Motion for Pretrial Release, Dkt. 108, and the government's Motion for Pretrial Detention, Dkt. 111.[1] For the reasons below, the Court will grant the defendant's motion and deny the government's motion.

**I.   BACKGROUND**

On January 30, 2024, Clark was convicted of felony obstruction, *see* 18 U.S.C. § 1512(c)(2), and five misdemeanor offenses for his actions at the U.S. Capitol on January 6, 2021. Dkt. 70. The Court sentenced Clark to 33 months' imprisonment—12 months above the high end of the guidelines range of 15 to 21 months. Dkt. 71. The Court varied upward due to the defendant's "highly aggressive" and obstructive conduct in and around the Capitol building. *See* Sentencing Tr. at 150–51. Clark reported to the Bureau of Prisons on December 4, 2023. He later appealed his § 1512(c)(2) conviction to the D.C. Circuit. Dkt. 72.

While his appeal was pending, Clark filed three separate motions for release, Dkts. 78, 90, 93, which the Court denied. On each occasion, the Court explained that appeal was unlikely to

---

[1] At the October 17, 2024, hearing, the government orally moved to have the defendant recommitted to BOP, and thus, it filed a memorandum in support of its earlier motion, Dkt. 111.

result in a "reduced sentence to a term of imprisonment less than the total of the time [Clark had] already served." Minute Order (4/30/2024); *see* Minute Order (7/26/2024) (citing 18 U.S.C. § 3143(b)(1)); Minute Order (2/13/2024). The Court further explained that "[s]hould the defendant's felony obstruction conviction be dismissed on appeal . . ., the Court will consider at any future resentencing the same aggravating and mitigating factors it took into account at sentencing, as well as the defendant's post-sentencing conduct." Minute Order (7/26/2024). Finally, it stated it would likely impose sentences at or near the statutory maximum of 12 months' imprisonment and would not take into account his early release credits. *Id.*

On September 9, 2024, on a joint motion by the parties, the D.C. Circuit vacated Clark's § 1512(c)(2) conviction and remanded the case for further proceedings. Dkt. 97. The next day, the Court directed the parties to submit a joint status report "proposing a schedule for further proceedings." Minute Order (9/10/2024).

On September 11, Eugene Ohm, lead counsel for the defendant, emailed Chambers staff *ex parte* and requested that staff fax the D.C. Circuit's order to the Bureau of Prisons. Before doing so, the law clerk reminded Ohm that the D.C. Circuit's order "vacated only the defendant's conviction under 18 U.S.C. § 1512(c)(2) . . . [and did] not imply [Clark] is entitled to release at this moment." The law clerk also inquired whether BOP still required a faxed copy under such circumstances. Counsel Ohm represented in a reply email that BOP "needs the paperwork so they can properly process [Clark's] release date and his reentry. I didn't mean to imply that he was supposed to be released at this moment."

Despite the Court's explicit orders—denying Clark's early release and directing the parties to propose a schedule for further proceedings, *see* Minute Order (9/10/2024); Minute Order

2

(4/30/2024); Minute Order (7/26/2024); Minute Order (2/13/2024)—on September 16, co-counsel, cc'ing Ohm, emailed BOP without the Court's knowledge, requesting Clark's immediate release:

> Jacob Clark . . . had one of his convictions vacated on appeal. The court order is attached, as well as the original judgment entered by the district court before the appeal. . . . My understanding is that, counting FSA earned time credit, he has over 12 months of time and so **should be released ASAP**. Can someone please help me get this information to his unit team.

Dkt. 106-1 (emphasis added). Defense counsel did not notify government counsel of their request. Nor did they inform BOP of the Court's previous denials of release or explain that the Court had not yet ordered Clark's release. Misled by defense counsel, BOP erroneously released Clark from custody on September 17, 2024. *See* Dkt. 102. At that point, Clark had served only 9.5 months of imprisonment. *Id.* Neither the Court nor government counsel was informed of Clark's release.

Thereafter, on September 23, the government informed defense counsel that it intended to file a superseding indictment. *See* October 17, 2024 Hearing Tr. at 9. On September 24 and 25, the parties filed status reports requesting an arraignment on the forthcoming indictment. Dkts. 98, 99. The defense report made no mention of the fact that Clark had already been released by BOP. Dkt. 99. Government counsel did not learn of Clark's release until nearly three weeks later, on October 11, when BOP alerted government counsel that Clark was no longer in custody.

That same day, government counsel notified the Court that Clark had been released as a result of defense counsel's request. Dkt. 102 at 2. Thereafter, defense counsel filed a response vigorously denying having made such a request. Dkt. 104 at 1. Instead, they claimed that they had contacted BOP only to recalculate Clark's release date and had emailed Chambers *ex parte* only to "pass [BOP's] directions along." *Id.* Defense counsel described the September 16 email, which had cc'd Ohm and requested Clark's release "ASAP," as a mere "follow up email" addressing BOP's own earlier directions. *Id.* Counsel boldly demanded that "[t]he government

3

should apologize for insinuating that defense counsel's actions to prevent Mr. Clark's overincarceration were somehow inappropriate." *Id.* at 3.

On October 17, 2024, the Court arraigned the defendant on the superseding indictment, which charges Clark with ten counts, including violations of 18 U.S.C. §§ 231(a)(3) and 111(a)(1) and (b). *See* Dkt. 100. The government explained that the charges in the superseding indictment reflected new evidence related to the assault charges, including video of Clark throwing a helmet at Capitol police inside the Crypt, and testimony from a victim officer that further strengthened the government's evidence that Clark had assaulted the officer with a 2-by-4 wooden plank. *See* October 17, 2024 Hearing Tr. at 23.

During the October 17 hearing, the Court questioned defense counsel about Clark's early release. Initially, lead counsel Ohm and his co-counsel denied having requested that BOP release Clark. Specifically, co-counsel claimed that the defense had no intention of "subverting or going around anybody's back" and that counsel had emailed BOP and Chambers only to seek the recalculation of Clark's early release credits. *Id.* at 13. But after government counsel read to the Court counsel's September 16 email to BOP, Ohm and his co-counsel acknowledged that they had in fact requested Clark's release. *Id*. at 22–24. Ohm, for his part, acknowledged that he was cc'd on the September 16 email, but denied ever reading it, despite having told the Court just moments before that he had "scour[ed] all of the BOP communications" over the relevant time period and that defense counsel had never "asked for or said [Clark's] supposed to be released or he needs to be released." *Id.* at 21.

On that record, the Court found that defense counsel had intentionally circumvented the judicial process by misleading the Court and BOP, without notice to government counsel. *Id.* at 20, 28. The Court's previous orders denying Clark's release, Chambers staff's explicit

4

communications with Ohm, and legal precedent all pointed in one direction: The next step following the *Fischer* remand was to return to Court for a resentencing hearing, or, at the very least, to file a motion for release. *See United States v. Weeks*, No. 21-cr-247 (JDB), Dkt. 118 (imposing amended judgment after post-*Fischer* resentencing proceedings); *United States v. Weyer*, No. 22-cr-40 (JEB), Dkt. 80 (same); *United States v. Adams*, No. 21-cr-354 (APM), Status Conference of October 8, 2024 (directing resentencing proceedings post-*Fischer*). At any resentencing hearing, the Court could have exercised its authority to release Clark, or it could have imposed consecutive sentences for some or all of Clark's misdemeanor convictions, resulting in a maximum possible sentence of four years' imprisonment. *See United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013) (explaining that after partial vacatur of a conviction, a district court may consider whether its original sentence was influenced by a vacated conviction and may "reconfigure the sentencing plan" to "effectuate its sentencing intent"); *United States v. Bru*, No. 21-cr-352 (JEB), Sentencing Tr. of January 24, 2024 (explaining that even if the defendant's § 1512(c)(2) conviction was overturned, his sentence would be the same because the court would impose consecutive sentences on the other counts of conviction to achieve the same period of imprisonment). Instead of filing a motion for release or requesting a resentencing, however, defense counsel contacted BOP and requested Clark's immediate release, misleading both BOP and the Court in the process. *See* October 17, 2024 Hearing Tr. at 20, 28.

On the government's motion to remand Clark to BOP custody, the Court ordered Clark to self-surrender to BOP on October 31, 2024. *See* October 17, 2024 Hearing Tr. at 39. The Court later stayed the order to give the parties adequate time to brief whether Clark should remain on release or be detained. *See* Minute Order (10/28/2024); Dkts. 108, 109, 110, 111. On November 6, 2024, the Court held a hearing on the parties' motions.

## II. LEGAL STANDARD

The parties argue that the Court should assess Clark's release under the Bail Reform Act, 18 U.S.C. § 3142, *see* Dkt. 108 at 3; Dkt. 111 at 1, even though BOP mistakenly released Clark from prison before the Court had an opportunity to resentence Clark on the original indictment. The sole argument the government advances in its briefs is that Clark should be detained because he is charged with a crime of violence, § 3142(f)(1)(A), and is a danger to the community, § 3142(f)(1)(E). Dkts. 109; 111. Clark does not dispute that 18 U.S.C. § 111(b) qualifies as a "crime of violence." 18 U.S.C. § 3142(f)(1)(A); *see also United States v. Klein*, 533 F. Supp.3d 1, 9-11 (D.D.C 2021). Consistent with the arguments raised by the parties in their briefs, the Court will assess Clark's dangerousness under 18 U.S.C. § 3142.

To determine whether there are conditions that will reasonably assure the safety of the community under § 3142(f), the Court must weigh the familiar § 3142(g) factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Under the Bail Reform Act, the Government may proceed by way of proffer, *see United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996), and must meet its burden by clear and convincing evidence, *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021).

## III. ANALYSIS

The first of the § 3142(g) factors—the nature and circumstances of Clark's offense— weighs in favor of detention. 18 U.S.C. § 3142(g)(1). Although none of offenses with which Clark is charged give rise to a rebuttable presumption of dangerousness under the Bail Reform Act, *see* 18 U.S.C. § 3142(e)(3)(A), they are undoubtedly serious. The superseding indictment

charges Clark with multiple felonies, including assault with a dangerous weapon which has a statutory maximum of twenty years in prison. *See* 18 U.S.C. § 111(b). As set forth in the stipulated statement of offense, Dkt. 43, and the Presentence Investigation Report (PSR), Dkt. 48, which the Court adopted at sentencing without objection as to its findings of fact, *see* Sentencing Tr. at 6–7, Clark stormed the Capitol building on January 6, 2021 with the intent to disrupt the certification of the electoral college vote. *See* PSR at 6–7; *see also id.* at 7 ¶ 17 (texting before 2:00 p.m., "We are trying to storm the capital"); *id*. at 7 ¶ 19 (texting minutes later, "We stormed it and busted the door down"). Once inside the Capitol, Clark was violent. He threatened law enforcement officers, yelled at them to "stand down," and encouraged other rioters forward. *See* Dkt. 43 at 7–13; PSR at 4–8; Sentencing Tr. at 146–149. He also assaulted law enforcement officers on two occasions: once by lobbing a helmet at a group of officers and in another instance by hitting an officer in the groin with a 2-by-4 plank. *See* Sentencing Tr. at 146–149; Dkt. 111 at 5–9. Both the nature and the circumstances of the charged offenses weigh in favor of the detention.

The second § 3142(g) factor—the weight of the evidence—also favors detention. 18 U.S.C. § 3142(g)(2). At sentencing, the Court found that the bench trial stipulation, the PSR, and the additional evidence proved that Clark had committed all of the violent conduct described, except for the alleged assaults. *See* Sentencing Tr. at 148–149. Since then, the government has proffered new evidence—including new video footage and testimony from the victim officer who was assaulted with the 2-by-4 plank. *See* Dkt. 111 at 3, 7-11. The defense questions the victim officer's identification of Clark, *see* Dkt. 115, but does not contest that Clark threw the helmet at a group of officers inside the Crypt, *see generally* Dkt. 110. Considering the evidence produced at sentencing, the video footage the Court reviewed for the November 6 hearing, *see* Dkt. 111 at 7-11, and the competing proffers, the Court finds that Clark assaulted federal officers with a helmet

7

and a 2-by-4 plank. Although the strength of the evidence is the least important of the § 3142(g) factors, it "weighs firmly in favor of detention." *Klein*, 533 F. Supp. 3d at 15.

While the first two factors favor of detention, the remaining factors, *see* 18 U.S.C. § 3142(g)(3), (g)(4), do not. With respect to the third factor—the defendant's history and characteristics—the same mitigating characteristics that the Court considered at sentencing, including Clark's lack of a significant prior record, *see* PSR at 11-17, and Clark's familial obligations, *see* Sentencing Tr. at 128, weigh in favor of Clark's continued release. Notably, the government did not move to detain Clark at the outset of this case. *See* Minute Entry (4/28/2021). Further, since being placed on supervision, Clark has performed well, both before and since his incarceration, cooperating with Pretrial Services and complying with his conditions of release. *See* Dkts. 58, 61. He self-surrendered without incident. And while incarcerated, Clark made admirable use of his time. *See* Dkt. 96 at 1. He completed non-residential drug treatment, paid down his financial assessment, completed three rounds of money management classes, and took several educational courses. *Id*. Finally, since his mistaken release on September 17, 2024, Clark has remained compliant with his conditions of supervision. *See* Dkt. 108 at 5.

The Court's determination as to factor four—whether the defendant poses a danger to any person or the community—also weighs in favor of release. "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope as it requires the Court to engage in an open-ended assessment of the seriousness of the risk to public safety." *Klein*, 533 F.Supp.3d at 17 (citations and quotation marks omitted). As the D.C. Circuit made clear in *United States v. Munchel*, to detain a defendant on dangerousness grounds, the government must show that the defendant "poses a concrete, prospective threat to public safety"—in other words, an "identified and articulable threat to an individual or the community." 991 F.3d at 1280 (citation

and quotation marks omitted). The government cannot meet this burden. Other than Clark's violent conduct on January 6, the Court is unaware of any other threats or violence in Clark's background. *See generally* PSR. And Clark has not violated his conditions of release during the pendency of this case. *See* Dkts. 58, 108. For these reasons, the Court finds that any potential threat to the community can be addressed effectively through conditions imposed on his release.

In sum, after evaluating the § 3142(g) factors, the Court concludes that the government has not met its burden of establishing, by clear and convincing evidence, that no condition or conditions of release will reasonably assure the safety of the community. Accordingly, the Court will allow Clark to remain on release pending trial on the superseding indictment. To reasonably assure his appearance and the safety of the community, the Court will reinstate his original conditions of pretrial release, *see* Dkts. 11, 20. 18 U.S.C. § 3142(c). The Probation or Pretrial Services Officer is directed to review these conditions with Clark, *see* 18 U.S.C. § 3142(h). If Clark violates his conditions of his release or if new evidence comes to light regarding his compliance to date, the Court will consider a petition or motion to amend or revoke his conditions of release.

Accordingly, it is

**ORDERED** that the defendant's Motion for Release, Dkt. 108, is **GRANTED**, and the government's Motion for Pretrial Detention, Dkt. 111, is **DENIED**. It is further

**ORDERED** that the Court's October 17 Order for the defendant to self-surrender to the Bureau of Prisons is **VACATED**. It is further

**ORDERED** that the defendant's original conditions of pretrial release are reimposed.

**SO ORDERED** by Judge Dabney L. Friedrich on December 5, 2024.

|  | /s/ Dabney L. Friedrich |
|---|---|
|  | DABNEY L. FRIEDRICH |
| December 5, 2024 | United States District Judge |